IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
November 19, 2024 Session

**STATE OF TENNESSEE v. RUSSELL MATTHEW MORGAN**

**Appeal from the Criminal Court for Monroe County**
**No. 21-391    Sandra N.C. Donaghy, Judge**

_____

**No. E2023-01815-CCA-R3-CD**

_____

A Monroe County jury found the Defendant, Russell Matthew Morgan, guilty of solicitation of a minor to commit aggravated statutory rape and solicitation of sexual exploitation of a minor by electronic means. On appeal, the Defendant raises three issues: (1) whether the evidence is legally insufficient to support his conviction for solicitation of sexual exploitation of a minor by electronic means; (2) whether Tennessee Code Annotated section 39-13-528 prohibits solicitation of a minor to commit aggravated statutory rape; and (3) whether the trial court erred in admitting hearsay testimony. Upon our review, we respectfully affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Criminal Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and JOHN W. CAMPBELL, SR., J., joined.

Robert L. Jolley, Jr., Knoxville, Tennessee, for the appellant, Russell Matthew Morgan.

Jonathan Skrmetti, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Stephen M. Hatchett, District Attorney General; and Dorothy Cherry, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

In March 2020, Detective Dan Schneider and Melissa Presley with the Monroe County Sheriff's Office began an investigation by setting up a fictitious Facebook profile as a fourteen-year-old girl named "Denver Kennedy." They accompanied the profile with photographs of a young-looking sheriff's office employee.

Shortly after the profile was created, the Defendant sent Ms. Kennedy a Facebook friend request, which the officers accepted. On March 3, 2020, the Defendant messaged Ms. Presley, who was acting as Ms. Kennedy, which started a message exchange that lasted over several days. The next day, the Defendant again contacted Ms. Kennedy, asking her to send pictures of herself.

When she sent her photograph on the following day, March 5, 2020, the Defendant said that she was "looking beautiful" and sent two "selfie" photographs. One photograph, admitted as Exhibit 5, was of the Defendant's face and bare chest. The second selfie photograph, admitted as Exhibit 6, was from a higher vantage point and showed the Defendant's face to his feet, focusing on his torso and groin area. The Defendant wore no shirt, his chest was bare, his jeans were pulled low on his hips, and he exposed several inches of his pubic hair.

Later that day and the next, the Defendant then sent Ms. Kennedy several messages, asking if she liked his photographs, confirming that she was fourteen years old, and revealing that he was forty-six years old. He told her that she was "very beautiful and gorgeous" and that "I bet you was older you would want me."

The next day, March 6, the Defendant again messaged Ms. Kennedy and confirmed that her "mother" was at work. He told her, "I bet you got a nice body on u. I do like u," and he asked her to send a picture of her body. He asked, "What would you do if we was together and touch u on ur butt," and "Would you make me stop or not[?]" In the same conversation, he asked, "What would you do if I try undo ur pants or shorts," followed immediately by, "Would you want me to lick it for you[?]" After Ms. Kennedy replied that she had never had sex, the Defendant asked her if she wanted him to take her virginity. At least four times during the conversation, he stated his desire to perform cunnilingus, and

2

he discussed having intercourse with her without a condom. He expressed his wish that she could perform fellatio, and he repeatedly asked if he was "making her wet."

Detective Schneider made the decision to arrest the Defendant that afternoon, and he and Detective Samantha Filley arrested the Defendant at his home. The two detectives later interviewed him at the Sheriff's office. After the interview, the Defendant consented to the officers searching his cell phone. While reviewing the phone's contents, Detective Filley saw the two photographs that the Defendant sent to Ms. Kennedy during their online chats.

On November 3, 2021, a Monroe County grand jury returned a two-count indictment against the Defendant, charging him with solicitation of a minor to engage in aggravated statutory rape (Count 1) and sexual exploitation of a minor by electronic means (Count 2). The case proceeded to trial on October 13, 2022, and Detective Filley and Ms. Presley testified to the facts mentioned above.

The jury returned a verdict finding the Defendant guilty as charged on Count 1. However, on Count 2, the jury convicted the Defendant of the lesser-included offense of *soliciting* the sexual exploitation of a minor by electronic means. After a sentencing hearing held on April 24, 2023, the trial court sentenced the Defendant to an effective sentence of two years, which was suspended to probation after service of six months in custody.[1]

On May 24, 2023, the Defendant filed a timely motion for a new trial. The trial court denied the motion by a written order entered on December 19, 2023, and the Defendant filed a timely notice of appeal eight days later. *See* Tenn. R. App. P. 4(a).

## ANALYSIS

In this appeal, the Defendant raises three issues. First, he argues that the evidence is legally insufficient to support his conviction in Count 2 for solicitation of sexual exploitation of a minor by electronic means. Second, he asserts that his conviction in Count 1 cannot be sustained because it failed to allege a crime. More specifically, he argues that

___

[1] The trial court suspended the two-year sentence for a period of five and one-half years. *See* Tenn. Code Ann. § 40-35-303(c)(1) (allowing suspension of a sentence of "no less than the minimum sentence allowed under the classification and up to and including the statutory maximum time for the class of the conviction offense").

aggravated statutory rape is not an offense that may be solicited pursuant to Tennessee Code Annotated section 39-13-528 (2018).  Finally, he contends that the trial court erred by allowing Detective Filley to testify in lieu of Detective Schneider, the lead detective.  We address each of these issues in turn.

## A.  LEGAL SUFFICIENCY OF THE EVIDENCE IN COUNT 2

The Defendant first challenges the legal sufficiency of the evidence sustaining his conviction in Count 2 for solicitation of sexual exploitation of a minor by electronic means, arguing that the photograph he shared was not a lascivious exhibition and that the photograph could not be used for sexual arousal or gratification.  The State responds that the evidence was sufficient to sustain the Defendant's conviction because the photograph showed "sexual activity" and that a rational juror could reasonably conclude that the Defendant displayed the photograph for either his or the minor's sexual gratification.  We agree with the State.[2]

### 1.  Standard of Appellate Review

"The standard for appellate review of a claim challenging the sufficiency of the State's evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *State v. Miller*, 638 S.W.3d 136, 157 (Tenn. 2021) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  This standard of review is "highly deferential" in favor of the jury's verdict.  *See State v. Lyons*, 669 S.W.3d 775, 791 (Tenn. 2023).  Indeed, "[w]hen making that determination, the prosecution is afforded the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom."  *State v. Thomas*, 687 S.W.3d 223, 249 (Tenn. 2024) (citation and internal quotation marks omitted).  To that end, "[w]e do not reweigh the evidence, because questions regarding witness credibility, the weight to be given the evidence, and factual issues raised by the evidence are resolved by the jury as the trier of fact."  *State v. Curry*, 705 S.W.3d 176, 183 (Tenn. 2025) (citations omitted).  "The standard

---

[2]    The Defendant alternatively challenges whether the jury could find that the photograph was "patently offensive," given that the picture does not show any "simulated sexual activity."  The State concedes that "the photograph does not contain simulated sexual activity that was patently offensive."  As such, we address only whether the photograph was a lascivious exhibition and whether the display could reasonably be construed as being for the sexual arousal or gratification of the intended minor or the Defendant himself.

4

of review is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (citation and internal quotation marks omitted).

That said, "appellate review of a lasciviousness determination in child sexual exploitation cases is [the] review of a mixed question of fact and law." *State v. Whited*, 506 S.W.3d 416, 427 (Tenn. 2016). As such, this court "must review the finding by the trier of fact that the depiction is a lascivious exhibition, including underlying factual issues such as the extent to which the [person shown] appears nude or whether the [person shown] appears to be portrayed in a sexually suggestive manner." *Id.* Further, when examining the evidence in the light most favorable to the State, as we must, this court "must determine whether the depiction is legally sufficient to constitute a 'lascivious exhibition' within the meaning of the statute. The latter determination is a question of law subject to plenary review." *Id.*

### 2. Tennessee Code Annotated Sections 39-13-102, -529

"The first step in evaluating the sufficiency of the evidence is to identify the elements of the offense." *State v. Rimmel*, 710 S.W.3d 640, 646 (Tenn. 2025). The State charged the Defendant with sexual exploitation of a minor by electronic means. At the time of the offense, Tennessee Code Annotated section 39-13-529(b)(3) (2018) provided as follows:

(b) It is unlawful for any person eighteen (18) years of age or older, directly or by means of electronic communication, electronic mail or internet service, including webcam communications, to intentionally:

. . . .

(3) Display to a law enforcement officer posing as a minor, and whom the person making the display reasonably believes to be less than eighteen (18) years of age, any material containing simulated sexual activity that is patently offensive or sexual activity, if the purpose of the display can reasonably be construed as being for the sexual arousal or gratification of the intended minor or the person displaying the material.

5

In other words, the charged offense occurs when (1) a person displays material depicting "sexual activity" to a law enforcement officer whom the person believes to be a minor under eighteen years of age; and (2) the display is reasonably understood to be for the purpose of causing sexual arousal or gratification of either the minor or the person displaying the material. *See* Tenn. Code Ann. § 39-13-529(b)(3).

### a.    Lascivious Exhibition

"Sexual activity" is defined, in pertinent part, as the "[l]ascivious exhibition of the female breast or the genitals, buttocks, anus or pubic or rectal area of any person." Tenn. Code Ann. § 39-13-529(d)(4)(G) (2018).[3]   In this case, the Defendant specifically challenges whether the State proved the element of sexual activity, arguing that the photo was not a "lascivious exhibition."

In *State v. Whited*, 506 S.W.3d 416 (Tenn. 2016), the Tennessee Supreme Court defined "lascivious" as "tending to excite lust; lewd; indecent; obscene." *Id.* at 430. It noted that "[l]ewd and lascivious are synonyms; both have a sexual connotation." *Id.* The court also emphasized, however, that "mere nudity, without more, is insufficient to establish a lascivious exhibition of private body areas." *Id.* at 431. This court has adopted the same definition of "lascivious" when considering the offense of sexual exploitation of a minor by electronic means. *See State v. McCord*, No. M2023-01209-CCA-R3-CD, 2024 WL 4040901, at *6-7 (Tenn. Crim. App. Sept. 4, 2024), *perm. app. denied* (Tenn. Jan. 24, 2025).

Following *Whited*, this court has recognized that whether an image constitutes a lascivious exhibition may depend not only on its content but also on the context in which it was sent. For example, in *State v. Holbrooks*, the defendant coaxed a minor to send him pictures of her private body areas as part of a sexually explicit conversation. *See State v. Holbrooks*, No. M2019-02099-CCA-R3-CD, 2020 WL 6060440 (Tenn. Crim. App. Oct. 14, 2020), *perm. app. denied* (Tenn. Feb. 4, 2021). This court concluded that the image sent by the victim was "sexual and lascivious within the ordinary meaning of those terms"

---

[3]    After the Defendant's trial, the General Assembly amended Tennessee Code Annotated section 39-13-529(d)(4)(G) (Supp. 2023) to remove the phrase "lascivious exhibition" from the definition of "sexual activity." The revised definition now reads: "Exhibition of the female breast, genitals, buttocks, anus, or pubic or rectal area of any person that can be reasonably construed as being for the purpose of the sexual arousal or gratification of the defendant or another." *See* 2023 Tenn. Pub. Acts, ch. 209, § 1 (eff. July 1, 2023).

because of the content of the image and because it was sent during "a text message thread about sex and sexual activity." *See id.* at *7. Similarly, in *State v. McCord*, this court held that the lascivious character of an image could be inferred from both its content and the context in which it was displayed. *See McCord*, 2024 WL 4040901, *6-7.

At trial, the State introduced two photographs into evidence, both of which the Defendant sent during his exchange with the undercover officer. While only the second photograph—admitted as Exhibit 6—is at issue in this appeal, the first photograph, Exhibit 5, provides helpful context.

The first photograph appears to have been taken at the same time and location as the second. It depicts the Defendant from the chest up, bare-chested and looking directly into the camera, with his face clearly visible. His pants are not pulled down in this image, and the pose is relatively neutral.

In contrast, Exhibit 6 is framed differently and captures a more revealing view. Taken from a slightly elevated, arm's-length angle, it focuses on the Defendant's torso and lower abdomen. His face is partially cropped out of the image, and the camera is directed downward toward his groin. The Defendant's pants are unfastened and pulled low on his hips, exposing several inches of his pubic hair. The pose, while superficially similar to the first photograph, is distinguishable in both composition and emphasis. Unlike Exhibit 5, which may be characterized as an ordinary, if somewhat odd, self-portrait, Exhibit 6 deliberately draws attention to the Defendant's now purposefully exposed pubic area. We conclude that Exhibit 6 is an overtly sexual display.

The context surrounding the photograph's transmission is also significant. The Defendant sent the image shortly after his friend request was accepted by someone he believed to be a fourteen-year-old girl. That same day, he asked whether she "liked" the image and remarked that if she were older, she would "want him." The following day, believing the minor was home alone, the Defendant resumed the conversation, asked her to send explicit photographs of herself, and proposed engaging in oral sex and vaginal intercourse.

Viewing both the contents and context of the photograph, a reasonable juror could conclude that the Defendant shared the image to elicit sexual interest or express sexual desire toward the recipient. As in *Holbrooks* and *McCord*, the photograph served no ordinary social function and formed part of a broader pattern of sexually motivated behavior directed toward a minor. We therefore conclude that the evidence presented at

trial was legally sufficient to establish that the photograph constituted a lascivious exhibition of the Defendant's pubic area and fell within the statutory definition of "sexual activity."

Pushing against this conclusion, the Defendant offers two arguments. First, he asserts that the photograph cannot be considered lascivious because it does not depict his genitals or any sexual act. This argument is unpersuasive. The statute expressly includes the "pubic area" as a part of the body that, if lasciviously exhibited, constitutes "sexual activity." Tenn. Code Ann. § 39-13-529(d)(4)(G). As such, the State was not required to prove that the Defendant lasciviously exhibited his genitals for criminal liability to attach.

Second, the Defendant argues that the image was a nonsexual greeting sent "days prior" to any explicit conversation. The appellate record does not support this claim. The image was sent shortly after the friend request was accepted and was accompanied by the Defendant's sexually suggestive comments. The very next day, he escalated to explicit sexual propositions. These facts support the conclusion that the photograph was intended to stimulate sexual desire or initiate a sexual exchange.

We conclude that the evidence was legally sufficient to support the jury's verdict on this element of the offense. The photograph introduced at trial plainly depicts a significant portion of the Defendant's exposed pubic area, and the circumstances under which it was sent—following the minor's acceptance of his friend request and in the context of overtly sexual and escalating communications—support a reasonable inference that the display was lascivious. As such, we conclude that a rational trier of fact could find that the image constituted a lascivious exhibition of a private body area and satisfied the statutory definition of "sexual activity." The Defendant is not entitled to relief on this ground.

### b. Sexual Arousal or Gratification

The Defendant contends that Exhibit 6 cannot "reasonably be construed as being for the sexual arousal or gratification of the intended minor or the person displaying the material." Tenn. Code Ann. § 39-13-529(b)(3). The State responds that, when considered in light of the surrounding context, the photograph supports a reasonable inference of such an intent. We agree.

Tennessee courts have recognized that terms such as "sexual arousal" and "sexual gratification" are not subject to rigid definitions. *See* S*tate v. Johnson*, No. W2011-01786-

8

CCA-R3-CD, 2013 WL 501779, at *11 (Tenn. Crim. App. Feb. 7, 2013) ("Sexual arousal and gratification are amorphous terms and defy a narrow definition."), *perm. app. denied* (Tenn. Aug. 14, 2013). Because a defendant's intent may rarely be established through direct proof, courts have held that the trier of fact may infer the required intent "primarily from the acts themselves," rather than from explicit admissions. *Id.*; *see also State v. Osborne*, 251 S.W.3d 1, 26 (Tenn. Crim. App. 2007) (noting that courts may infer sexual motivation from conduct such as overtly sexual displays or sexually explicit remarks).

Furthermore, this court has repeatedly held that a jury may find the requisite intent even in the absence of evidence that the defendant experienced actual arousal. *See State v. Vandenburg*, No. M2017-01882-CCA-R3-CD, 2019 WL 3720892, at *60 (Tenn. Crim. App. Aug. 8, 2019) ("The criminal actor need not actually become aroused for a jury to find that his actions can be reasonably construed as being for the purpose of sexual arousal or gratification.") *perm. app. denied*, (Tenn. Jan. 15, 2020). The determination may rest on the surrounding facts and circumstances and the jury's application of common sense and everyday experience. *See State v. Allison*, 618 S.W.3d 24, 40 (Tenn. 2021); *State v. Nesbit*, 978 S.W.2d 872, 886 (Tenn. 1998) ("[J]urors are free to use their common knowledge and judgment derived from experience, observation, and reflection to decide whether a fact is logically deducible or reasonably inferred from the evidence.").

In this case, the Defendant's conduct and its context provide a sufficient basis to support the jury's verdict. Again, the Defendant sent a photograph in which his pants were pulled low enough to expose several inches of his pubic area. He followed the image with a message asking if she "liked" the photograph and stated, "I bet you was older you would want me." The conversation then escalated into an extended exchange of explicit sexual messages in which the Defendant attempted to initiate sexual activity. From these facts, a rational juror could conclude that the image was shared either for the Defendant's own sexual gratification or to elicit sexual interest from the recipient. *See State v. Gossett*, No. W2013-01120-CCA-R3-CD, 2014 WL 6609353, at *8 (Tenn. Crim. App. Nov. 21, 2014) (holding that sexual intent may be inferred where the defendant engaged in private sexual conduct and told the victim not to disclose the interaction), *no perm. app. filed*.

Because the Defendant raises no additional challenges to the elements of his conviction under Count 2, and because the record contains legally sufficient evidence to establish both a lascivious exhibition and the requisite sexual intent, we conclude that the Defendant's conviction should be affirmed. The Defendant is not entitled to relief on this ground.

### B. SOLICITATION OF A MINOR TO COMMIT AGGRAVATED STATUTORY RAPE

Next, the Defendant challenges whether his conviction offense in Count 1—solicitation of a minor to commit aggravated statutory rape—is a crime under Tennessee law. Although the Defendant presents this argument in several procedural contexts, his position ultimately is that aggravated statutory rape is not one of the enumerated offenses listed in Tennessee Code Annotated section 39-13-528 ("Solicitation Statute").[4] More specifically, he argues that the Solicitation Statute refers only to "statutory rape," and not to "aggravated statutory rape," as one of the underlying offenses that may be solicited. In response, the State maintains that this court has previously recognized aggravated statutory rape as one of the offenses covered by the Solicitation Statute. We agree that solicitation of a minor to commit aggravated statutory rape is a criminal offense in Tennessee.

#### 1. Standard of Appellate Review

The legal interpretation of a statute is a question of law, which we review de novo with no presumption of correctness. *See, e.g.*, *Richards v. Vanderbilt Univ. Med. Ctr.*, 706 S.W.3d 319, 323 (Tenn. 2025); *State v. Hollon*, 671 S.W.3d 561, 565 (Tenn. Crim. App. 2023).

#### 2. Aggravated Statutory Rape as an Enumerated Offense

It is well established that "[t]he power to define criminal offenses and assess punishments for crimes is vested in the legislature." *State v. Gentry*, 538 S.W.3d 413, 420 (Tenn. 2017); *State v. Gabehart*, 691 S.W.3d 24, 26 (Tenn. Crim. App. 2024); *State v. Lyons*, 669 S.W.3d 775, 788 (Tenn. 2023) ("It is the role of the legislature to declare and define

---

[4] The Defendant raises three related arguments stemming from his view that solicitation of a minor to commit aggravated statutory rape is not a cognizable offense. First, he argues that the trial court erred by denying his motion to dismiss Count 1 of the indictment, asserting that the indictment failed to charge a recognized offense and thus provided inadequate notice. Second, he contends that, because the original indictment did not charge a valid offense, the trial court improperly allowed the State to amend the indictment—both to correct a typographical error and to change the date of the alleged offense—thereby, in his view, creating a new charge. Third, he claims that the indictment's failure to charge a valid offense deprived the trial court of a sufficient basis on which to enter judgment. All three arguments rest on the same underlying premise: that aggravated statutory rape is not among the offenses enumerated in the Solicitation Statute. We address these arguments below.

conduct constituting a crime and to determine the nature and extent of the punishment for it."). In interpreting criminal statutes, we "always begin with the words the General Assembly has used in the statute." *Gentry*, 538 S.W.3d at 420.

The Solicitation Statute defines the offense of solicitation of a minor by identifying how the solicitation may occur and by specifying what criminal offenses a defendant may not solicit a minor to commit. As relevant here, the statute provides:

> (a) It is an offense for a person eighteen (18) years of age or older, by means of oral, written or electronic communication, electronic mail or Internet services, directly or through another, to intentionally . . . solicit[] a law enforcement officer posing as a minor, and whom the person making the solicitation reasonably believes to be less than eighteen (18) years of age, to engage in conduct that, if completed, would constitute a violation by the soliciting adult of one (1) or more of the following offenses:
>
> . . . .
>
> (7) Statutory rape, pursuant to § 39-13-506[.]

*See* Tenn. Code Ann. § 39-13-528(a)(7). Section -528(a)(7) thus expressly identifies "Statutory rape, pursuant to § 39-13-506" as an enumerated offense. Tennessee Code Annotated section 39-13-506 (2018) (the "Statutory Rape Statute") defines three types of statutory rape offenses and distinguishes them primarily based on the relative ages of the victim and the offender. *See* Tenn. Code Ann. § 39-13-506(a), (b)(1)-(2), (c).

This court has consistently interpreted the Solicitation Statute to include aggravated statutory rape as an enumerated offense. As early as 2012, we recognized that the statute criminalizes solicitation of a minor to commit one "of several specifically-enumerated sex crimes," including "aggravated statutory rape." *State v. Rosson*, No. M2010-01361-CCA-R3-CD, 2012 WL 1813107, at *11 (Tenn. Crim. App. May 18, 2012), *no perm. app. filed*. Since that time, we have uniformly applied this interpretation. *See, e.g.*, *State v. Willis*, No. W2023-01309-CCA-R3-CD, 2025 WL 304790, at *3 (Tenn. Crim. App. Jan. 27, 2025) (affirming conviction for solicitation of a law enforcement officer posing as a minor to commit aggravated statutory rape), *no perm. app. filed*; *State v. Weldon*, No. E2017-01474-CCA-R3-CD, 2018 WL 3343593, at *7 (Tenn. Crim. App. July 9, 2018) (upholding

conviction based on solicitation of a minor to commit aggravated statutory rape), *no perm. app. filed*.

Our decisions have been consistent and reflect no doubt about what conduct is prohibited by the Solicitation Statute. Indeed, we have routinely affirmed convictions and sentences for solicitation of a minor to commit aggravated statutory rape without questioning whether the General Assembly criminalized such conduct. *See, e.g.*, *State v. Burns*, No. M2014-00357-CCA-R3-CD, 2015 WL 2105543, at *13 (Tenn. Crim. App. May 5, 2015), *no perm. app. filed*; *State v. McCoy*, No. E2013-02138-CCA-R3-CD, 2014 WL 2211407, at *6 (Tenn. Crim. App. May 27, 2014), *no perm. app. filed*; *State v. Rankin*, No. M2011-01849-CCA-R3-CD, 2012 WL 3255087, at *1 (Tenn. Crim. App. Aug. 9, 2012), *no perm. app. filed*; *State v. Logsdon*, No. E2011-00359-CCA-R3-CD, 2012 WL 432849, at *1, 4 (Tenn. Crim. App. Feb. 13, 2012), *perm. app. denied* (Tenn. May 23, 2012). Our supreme court has also upheld a probation treatment condition for this offense without raising any question as to whether the underlying conduct was a crime. *See State v. Albright*, 564 S.W.3d 809, 822 (Tenn. 2018). This consistent line of authority confirms that aggravated statutory rape has long been understood as an enumerated offense under the Solicitation Statute.

The Defendant nonetheless argues that because the Solicitation Statute refers only to "statutory rape," it does not reach aggravated statutory rape. For two reasons, we respectfully disagree.

First, the Defendant's interpretation disregards the full statutory reference in Tennessee Code Annotated section 39-13-528(a)(7), which incorporates "Statutory rape, pursuant to § 39-13-506." When the Solicitation Statute was enacted, section 39-13-506 defined a single offense—statutory rape—and the section was titled accordingly with this single offense. *See* Tenn. Code Ann. § 39-13-506 (Supp. 1998). In 2006, the General Assembly amended that section to define three distinct offenses: mitigated statutory rape, statutory rape, and aggravated statutory rape. Although the contents of the Statutory Rape Statute expanded, the statutory title remained "Statutory Rape" until 2014, when the Code Commission revised the heading to reflect all three offenses comprising statutory rape. *See* Tenn. Code Ann. § 39-13-506 (2014 Repl.).

A reasonable reader of the statute would understand that the reference to "Statutory rape" in the Solicitation Statute functions as a historical label for the Statutory Rape Statute as a whole and not as a constraint on its evolving content. *Cf.* Tenn. Code Ann. § 1-3-109; *Williams v. Smyrna Residential, LLC*, 685 S.W.3d 718, 723 (Tenn. 2024) (stating that when

interpreting statutes, "we ask how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued." (citation and internal quotation marks omitted)). Indeed, it is significant that the General Assembly has never narrowed the scope of the Solicitation Statute, despite expanding the definition of statutory rape to include additional age ranges and corresponding punishments. Because the Solicitation Statute references the entire Statutory Rape Statute, and not a specific subsection, a reasonable reader fully competent in the language would understand that the Solicitation Statute prohibits soliciting a minor to commit any of the offenses defined in the Statutory Rape Statute, including aggravated statutory rape. Accordingly, we conclude that the Solicitation Statute continues to apply to all forms of statutory rape as defined by the General Assembly.

Second, our consistent interpretation of the Solicitation Statute to include aggravated statutory rape as an enumerated offense carries considerable weight. In matters of statutory construction, the doctrine of *stare decisis* promotes legal stability, allowing individuals to understand their rights and obligations with confidence. As our supreme court has explained, adherence to precedent brings "firmness and stability to principles of law." *Hooker v. Haslam*, 437 S.W.3d 409, 422 (Tenn. 2014). Consistent interpretation of statutes also protects the public's ability to rely on judicial decisions, as rights may attach in reliance on those rulings. *See State v. Palmer*, 10 S.W.3d 638, 649 (Tenn. Crim. App. 1999). For that reason, courts do not disturb settled statutory interpretations absent a compelling justification. As the supreme court has cautioned, we should "not lightly depart from a prior decision that has been implemented and acted upon for some time, and that is not repugnant to some rule of law of vital importance." *Family Trust Servs. LLC v. Green Wise Homes LLC*, 693 S.W.3d 284, 303 (Tenn. 2024) (cleaned up).

Here, neither the record nor our precedent suggests that interpreting the Solicitation Statute to include aggravated statutory rape is erroneous or unreasonable. No relevant legal or factual change renders our prior interpretations obsolete, and nothing indicates that continued adherence would cause substantial harm. *Cf. id.* As such, we do not find a compelling justification to disturb our settled statutory precedent. Accordingly, we hold and reaffirm that the General Assembly has criminalized the solicitation of a minor to commit aggravated statutory rape.

### 3. Defendant's Remaining Issues

Our holding effectively resolves the Defendant's challenges to Count 1. Because we conclude that solicitation of a minor to commit aggravated statutory rape is a cognizable criminal offense under Tennessee law, each of the Defendant's arguments directed at the indictment, its amendment, and the resulting judgment necessarily fail.

First, the indictment was not defective for failing to charge a crime. It is true that the indictment initially cited an incorrect statutory provision in the Statutory Rape Statute, Tennessee Code Annotated section 39-15-506(c), which does not exist. However, the indictment expressly identified the solicited offense as being "Aggravated Statutory Rape," and it cited the correct solicitation statute, section 39-13-528. When read as a whole, the indictment gave the Defendant sufficient notice of the nature of the charge and the conduct alleged. Moreover, any deficiency in the original allegation was corrected by the subsequent pretrial amendment. *See* Tenn. R. Crim. P. 7(b); *State v. Bledsoe*, 226 S.W.3d 349, 354 (Tenn. 2007).

Second, the trial court properly allowed the State to amend the indictment to correct the citation to the Statutory Rape Statute. The citation correction did not charge a new or different offense, and the amendment occurred before jeopardy attached. The Defendant had notice from the outset that he was being prosecuted for solicitation of a minor to commit aggravated statutory rape, and he has not demonstrated that the amendment prejudiced any substantial right. *See State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000); *State v. Martin*, 505 S.W.3d 492, 500 (Tenn. 2016).

Third, the judgment as to Count 1 rested on a valid indictment that conferred jurisdiction on the trial court. The Defendant's claim that the court lacked authority to enter judgment is premised entirely on his mistaken belief that the charged offense is not recognized by law. Because we have respectfully rejected that premise, it necessarily follows that the indictment supported a valid judgment and sentence.

In sum, the Defendant was indicted for a cognizable criminal offense, the indictment was properly amended, and the trial court lawfully imposed judgment upon the conviction. We conclude that the Defendant's procedural objections to Count 1 are without merit and that he is not entitled to relief.

## C.    DETECTIVE FILLEY'S TESTIMONY

Finally, the Defendant argues that the trial court erred in admitting hearsay statements through Detective Filley.  The Defendant's argument is couched in a complaint that the State called Detective Filley to testify in lieu of the lead detective, Detective Schneider, who he believes would have been better subject to impeachment.  However, as far as we can tell, the actual issue is that the State introduced the video recording of his statement to law enforcement through Detective Filley, even though Detective Schneider conducted the interview.  Asserting that the statements made by Detective Schneider on the recording are hearsay, the Defendant argues that the State could not have introduced the video unless Detective Schneider testified at trial.

The State responds that the Defendant has waived this claim for relief.  It argues that the Defendant failed to adequately brief the issue and that he failed to raise any hearsay issue in his motion for a new trial.  We agree with the State.

### 1.    Identification of Hearsay Statements

As an initial matter, we conclude that the Defendant has waived a hearsay challenge on appeal by failing to identify what specific statements he believes were subject to exclusion at trial.  As defined by our Rules of Evidence, a hearsay statement is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Tenn. R. Evid. 801(c).  Our supreme court has provided a three-part inquiry for determining whether a particular statement is hearsay: "(1) the statement must be made out-of-court; (2) the statement must qualify as an assertion; and (3) the statement must be offered to prove the truth of the matter asserted therein."  *State v. McCoy*, 459 S.W.3d 1, 11 (Tenn. 2014) (citation and internal quotation marks omitted).

In at least some cases where a defendant is asked questions by law enforcement, the officer's questions themselves may not be hearsay when they are offered to show the context for the defendant's responses.  *State v. Perry*, No. M2020-01407-CCA-R3-CD, 2022 WL 1195311, at *5 (Tenn. Crim. App. Apr. 22, 2022), *perm. app. denied* (Tenn. Nov. 16, 2022); Neil P. Cohen, et al., *Tennessee Law of Evidence* § 8.01[10] (7th ed. 2024) ("[Q]uestions are usually not hearsay.  Statements designed to (1) provide a context for, or (2) permit an understanding of, another statement may not be hearsay." (footnotes omitted)).  However, even if a statement is nominally phrased as a question, the statement

can be hearsay if the declarant intended it to be an assertion. *See, e.g.*, *State v. Tice*, No. M2021-00495-CCA-R3-CD, 2022 WL 2800876, at *36 (Tenn. Crim. App. July 18, 2022), *perm. app. denied* (Tenn. Dec. 14, 2022). In other words, questions asked of a defendant may or may not constitute hearsay depending on their context and the reasons why the particular questions are being offered into evidence.

In this case, the Defendant has not identified the particular statements he contends were inadmissible hearsay beyond the general complaint against Detective Schneider's questions asked of him during his interview. However, we cannot evaluate the merits of the Defendant's hearsay claims without knowing what particular questions or statements are challenged and understanding the context in which they were offered as evidence at trial. *See State v. Bonds*, 502 S.W.3d 118, 144 (Tenn. Crim. App. 2016) (concluding that a challenge to evidence is waived where an appellate brief fails to "specifically identify which evidence [the defendant] deems improper" and makes "only a general complaint"). We conclude that the Defendant has waived this issue on appeal. *See* Tenn. R. Ct. Crim. App. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court.").

### 2. Failure to Preserve Issues in the Trial Court

Even if the Defendant properly identified the evidence he wishes us to review—and he has not—he has also waived review of these issues by failing to preserve them in the trial court. Before a party can challenge the admission of evidence on appeal, the party must ordinarily have preserved the issue in the trial court. *See State v. Ruiz*, No. E2023-01017-CCA-R3-CD, 2024 WL 5103509, at *7-8 (Tenn. Crim. App. Dec. 13, 2024), *perm. app. denied* (Tenn. May 23, 2025). To preserve an issue, the party should first assert a timely objection identifying a specific ground. The party then must later raise that issue in a motion for a new trial. *State v. Thompson*, No. W2022-01535-CCA-R3-CD, 2023 WL 4552193, at *3 (Tenn. Crim. App. July 14, 2023), *no perm. app. filed*. Otherwise, the party waives plenary review of the issue on appeal. *See id.* These principles apply, of course, to claims of hearsay and the confrontation clause. *See State v. Gray*, No. E2022-01000-CCA-R3-CD, 2023 WL 3916272, at *6 (Tenn. Crim. App. June 9, 2023), *perm. app. denied* (Tenn. Nov. 17, 2023) (concluding that the defendant waived plenary review by failing to object to hearsay testimony at trial or raise the issue in a motion in limine).

In this case, the Defendant did not raise a hearsay issue in his motion for a new trial, asserting instead only that "[t]he trial court erred in allowing Samantha Filley to be added

as a witness." At the later hearing on his motion, the Defendant did not mention hearsay at all as a possible issue or a ground for relief. Instead, he argued that the State should have called the lead detective to "justify his conduct" in front of the jury and be cross-examined about perjury in another case. Because the Defendant raised no issue in his motion for a new trial with respect to any alleged hearsay evidence, the Defendant has waived plenary review of the issue. *See State v. Funk*, No. E2022-01367-CCA-R3-CD, 2023 WL 7130289, at *2 (Tenn. Crim. App. Oct. 30, 2023) ("Before a defendant may raise an issue on appeal as the basis for seeking a new trial, the defendant must present the issue to the trial court in a timely, written motion for a new trial."), *no perm. app. filed.*

In addition, we decline to address this issue for possible plain error relief. We have recognized that "a party seeking plain error relief must generally raise and argue the issue in the party's briefing, just as the party would do with all other issues in the ordinary course of an appeal." *Ruiz*, 2024 WL 5103509, at *8 (quoting *Funk*, 2023 WL 7130289, at *3), *perm. app. denied* (Tenn. May 23, 2025). Indeed, because the defendant bears the burden of showing an entitlement to plain error relief, his or her "failure to request this relief necessarily weighs against any such consideration on our own." *State v. Gooch*, No. M2022-01395-CCA-R3-CD, 2024 WL 2814624, at *4 (Tenn. Crim. App. June 3, 2024), *perm. app. denied* (Tenn. Nov. 20, 2024).

In this case, the Defendant does not request that we conduct a plain error analysis of his hearsay issue. Nor does he respond to the State's argument that he has waived plenary review of this issue. "Where a defendant fails to respond to a waiver argument, only particularly compelling or egregious circumstances could typically justify our sua sponte consideration of plain error relief." *Ruiz*, 2024 WL 5103509, at *8 (citation and internal quotation marks omitted). Because no such circumstances exist here, we respectfully decline to consider plain error relief on our own. The Defendant is not entitled to relief on this ground.

Finally, we note that in his reply brief, the Defendant nominally argues that allowing Detective Filley to testify was a Confrontation Clause violation because the State failed to show that Detective Schneider was unavailable. However, not only did the Defendant fail to support this claim with argument, citations to the record, or citations to the law, our supreme court has made clear that where an appellant "only fully asserts and briefs [a] claim in [the] reply brief," the issue is waived. *Hughes v. Tennessee Bd. of Prob. & Parole*, 514 S.W.3d 707, 724 (Tenn. 2017); *Owens v. Owens*, 241 S.W.3d 478, 499 (Tenn. Ct. App. 2007) ("A reply brief is a response to the arguments of the appellee. It is not a vehicle for raising new issues."). After all, permitting an appellant to advance new arguments in a

reply brief, as here, is "fundamentally unfair[,] as the appellee may not respond to a reply brief." *Caruthers v. State*, 814 S.W.2d 64, 69 (Tenn. Crim. App. 1991); *State v. Chism*, No. E2023-00620-CCA-R3-CD, 2024 WL 4824881, at *11 (Tenn. Crim. App. Nov. 19, 2024) (same), *perm. app. denied* (Tenn. Apr. 17, 2025).

Based upon the foregoing, we must respectfully conclude that the Defendant has waived any issues related to Detective Filley's testimony. The Defendant is not entitled to relief on these issues.

## CONCLUSION

In summary, we hold that the proof is legally sufficient to sustain the Defendant's conviction for solicitation of sexual exploitation of a minor by electronic means. We also hold that the law prohibits solicitation of a minor to commit aggravated statutory rape and that the Defendant is not entitled to any relief regarding that issue. Finally, we hold that the Defendant waived any issues regarding Detective Filley's testimony by failing to preserve those issues in the trial court or by raising them for the first time in a reply brief. As such, we respectfully affirm the judgments of the trial court.

s/ ***Tom Greenholtz***
TOM GREENHOLTZ, JUDGE

18